IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 14, 2005 Session

# STATE EX. REL. PAULA A. FLOWERS v. TENNESSEE TRUCKING ASSOCIATION SELF INSURANCE GROUP TRUST, ET. AL.

**Appeal from the Chancery Court for Davidson County**
**No. 04-245-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2004-01980-COA-R3-CV - Filed April 18, 2006**

---

Seven members of the Tennessee Trucking Association Self-Insurance Group Trust appeal the post-liquidation assessment against members of the self-insured group to fund a $2.8 million deficit. The self-insured group trust was declared insolvent in 2004 by the Chancery Court, following which the Commissioner of Commerce and Insurance was appointed Liquidator of the Trust. In the capacity of Liquidator, the Commissioner was responsible for administering the Trust, which included making assessments of the members of the Trust to satisfy its financial obligations. The appellants contend the assessment methodology employed by the Liquidator, which modified the proportionate financial obligations of the members, constituted an impermissible modification of the premium structure the members agreed upon. The trial court determined the only proscription upon making assessments was a requirement the methodology be equitable. Finding the methodology utilized by the Liquidator was equitable, the trial court approved the assessments. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Roland M. Lowell, Nashville, Tennessee, for the appellants, Christenberry Trucking, Inc., DCI Transportation, LLC, Empire Express, Inc., Fineline Carriers, Inc., Ocoee River Transport, Inc., Specialized Transportation Services, Inc., and Western Express, Inc.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Sarah Ann Hiestand, Senior Counsel, Office of the Attorney General; Hugh O. Brock, Tennessee Department of Commerce and Insurance; and Renard A. Hirsch, for the appellee, State of Tennessee.

1

**OPINION**

Fifty trucking companies entered into a series of agreements in 1995 to form the Tennessee Trucking Association Self-Insurance Group Trust.[1] The self-insurance group was formed in compliance with statutory and regulatory requirements of the Tennessee Workers' Compensation Act, specifically, Tenn. Code Ann. § 50-6-405(c) and Tenn. Comp. R. & Regs. Ch. 0780-1-54. The purpose of the Trust was to provide workers' compensation insurance for members of the Tennessee Trucking Association, motor carriers, that elected to participate.

The Trust was subject to review and audit by the Tennessee Department of Commerce and Insurance. The Trust was required to file an audited financial statement annually. Tenn. Code Ann. § 50-6-405(c).[2] In 2004, the Commissioner conducted an examination of the audited financial statements of the Trust and discovered an operating deficit of $2,843,646.00. After attempts to negotiate a resolution of the deficit proved unsuccessful,[3] the Commissioner filed a petition to liquidate with the Chancery Court of Davidson County. Finding the Trust was insolvent and its continued operation would be hazardous to policyholders, members of the Trust and to the general creditors, the trial court granted the petition and issued an order for liquidation.[4]

With the approval of the court, the Commissioner appointed two Special Deputy Liquidators to administer the Trust. Their duties included making temporary total disability benefit payments and medical payments to, or on behalf of, insured employees who had sustained compensable injuries. The Deputy Liquidators were also responsible for ensuring the Trust was solvent. To accomplish this, it was necessary the Deputy Liquidators impose assessments against members of the Trust because the premium structure the members had agreed upon was inadequate to fund the obligations of the Trust.[5]

---

[1] The Trust provided worker's compensation coverage to its members from that date until it temporarily ceased operations in January 1998. It resumed operations on December 1, 2001 and provided workers' compensation coverage to its members until December 31, 2003.

[2] In 2002, Tenn. Code Ann. § 50-6-405(c) was amended to require self-insured groups to file an audited financial statement annually.

[3] In July of 2003, the Department of Commerce and Insurance directed the Trust to assess its members to remedy the 2002 deficit. When it failed to comply, the Commissioner ordered the Trust to assess its members to cure the 2002 deficit. In the interim, the prospective deficit for 2003 was rising. As of November 2003, the actuarial report submitted by the Trust to the Commissioner estimated the loss for 2003 would be $4,632,331. By the end of 2003, the Trust had not remedied the 2002 deficit or submitted a viable plan to deal with the deficits. The Trust made an assessment on December 1, 2003; however, it did not comply with the Commissioner's Order of Assessment.

[4] No opposition was made to the liquidation at the hearing, and the grant of the petition was not appealed.

[5] The sole source of revenue for the self-insured trust was the premiums remitted by the members of the Trust, the motor carriers.

When the Trust was formed, each member entered into a series of agreements with the Trust. One of those agreements pertained to the premium to be paid by each member. The premium obligation of each member was based on several factors, including the job classifications of its employees and the number of employees in the respective classifications. Once the base premium was determined, other factors were considered that could increase or decrease the premium. One of those factors which would decrease a member's premium, was designation as a drug-free workplace by the Department of Labor.

Following a detailed examination of the financial records of the Trust, the Deputy Liquidators identified errors in the premium structure that contributed to the deficit. The errors identified included mistakes in job classification and improper credits, all of which resulted in impermissible premium deductions. As a consequence of these errors, the gross revenues of the Trust were inadequate to fund its financial obligations and some members were paying more and other members were paying less than their fair share of the financial obligations of the Trust.

After correcting the erroneous job classifications and credits, the Deputy Liquidators established an assessment methodology to cure what the Deputy Liquidators deemed to be inequities in the existing premium structure. The methodology was based upon procedures and guidelines established by the National Council on Compensation Insurance.[6] Thereafter, the Deputy Liquidators notified the members of their respective assessments. A meeting was held to explain the assessments and the methodology. Not surprisingly, the new methodology and respective assessments were met with objections from members whose proportionate share of the financial obligation was increased. As a consequence, the trial court conducted a hearing concerning the objections by some members relative to their portion of the total assessment and assessment methodology.

At the hearing, the Commissioner established that she had the authority, and indeed was required to make assessments pursuant to Tenn. Comp. R. & Regs. Ch. 0780-1-54-.18(5). She also established that she had the authority pursuant to the Trust Agreement and Indemnification Agreement the members of the Trust had entered into at the formation of the Trust. Moreover, she established that she had the authority to make assessments pursuant to Tenn. Comp. R. & Regs. Ch. 0780-1-54-.18(3) absent an order of liquidation.[7] In part, the Commissioner relied upon the authority given her by the trial court in the February 2004 order of liquidation that provided: "[The Trust] is bound and has the right to assess its members for the liabilities of [the Trust], and the Commissioner, upon being appointed as receiver, is expected to pursue such recoveries."

Over the objection of some members of the Trust, the trial court concluded the Commissioner had the authority to make assessments to remedy a deficit, and the statutes and regulations placed

[6] National Counsel on Compensation Insurance is an organization which gathers data on a nationwide basis and creates tables reflecting the loss experience in each state for each type of employment.

[7] As of November 14, 2005, this Rule, in a revised form, is found at TN ADC 0780-1-54-.24 (6).

3

no limitations on how the Commissioner should make assessments other than the methodology employed must be equitable. Further, the trial court found that the methodology employed was equitable because it complied with procedures and guidelines established by the National Council on Compensation Insurance and corrected errors that should not be perpetuated, resulting in the members being responsible for an equitable proportion of the deficit.

Seven of the fifty members of the trust have appealed.[8] They set forth several issues but the principal contention is that the Commissioner did not have the authority to alter the proportionate share of each member's obligation.[9]

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo*, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). Mixed questions of law and fact are subject to a different standard of review. *Bubis v. Blackman*, 435 S.W.2d 492, 498 (Tenn. Ct. App. 1968).

A mixed question of law and fact arises where the construction of a written agreement depends on extrinsic facts as to which there is a dispute. *Hibernia Bank & Trust Co. v. Boyd,* 48 S.W.2d 1084 1086-1087 (Tenn. 1932); *see State ex rel. Moretz v. City of Johnson City*, 581 S.W.2d 628, 631 (Tenn. 1979) (holding that the interpretation of a written instrument, usually a question of law, may become a mixed question of law and fact, and that the question of "reasonableness" is a mixed question of law and fact); *Abdur'Rahman v. Bredesen,* 181 S.W.3d 292, 305 (Tenn. 2005)

---

[8] All fifty members of the Trust were assessed; however, only seven appeal the July 2004 Order. The members appealing are: Christenberry Trucking, Inc., DCI Transportation, LLC, Empire Express, Inc., Fineline Carriers, Inc., Ocoee River Transport, Inc., Specialized Transportation Services, Inc., and Western Express, Inc.

[9] The Appellants identify the issues as: whether the trial court was at liberty to rewrite the insurance policy, give effect to the policy absent fraud, overreaching or unconscionability; whether the trial court must give effect to the contract even if not approved by the Department of Insurance; whether contracts for insurance premiums are subject to the same contract interpretation rules as other contracts; and whether the members justifiably relied on quoted premiums.

(holding a constitutional claim that is resolved after an evidentiary hearing generally presents a mixed question of law and fact).

A presumption of correctness does not attach to mixed questions of fact and law. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (citing *Murdock Acceptance Corp. v. Jones*, 362 S.W.2d 266, 268 (Tenn. Ct. App. 1961)). Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination as to the legal effect of its factual findings, nor by its determination of a mixed question of law and fact. *Travelers Insurance Co. v. Evans*, 425 S.W.2d 611, 616 (Tenn. 1968); *Sullivan v. Green*, 331 S.W.2d 686, 692-93 (Tenn. 1959). Our standard of review of rulings on mixed questions of fact and law is de novo with a presumption of correctness extended only to the trial court's findings of fact. *Abdur'Rahman,* 181 S.W.3d at 305 (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

## ASSESSMENT

The Tennessee Trucking Association Self-Insurance Group Trust could not exist but for Tenn. Code Ann. § 50-6-405(c). The statute enables employers to pool their resources to be self-insured.[10] The statute also empowers the Commissioner to police the activities of self-insured groups, to review and audit the groups, and to enforce pooling agreements among the member employers of such groups to fund deficits.

The same statutory scheme empowers the Commissioner to promulgate rules and regulations "to provide for the solvency, administration and enforcement of such pooling agreements." Tenn. Code Ann. § 50-6-405(c)(1). The relevant rules promulgated pursuant to the statute are Tenn. Comp. R. & Regs. Ch. 0780-1-54. These rules empower the Commissioner to assess the members should a deficit occur.

> If the assets of a group are at any time insufficient to enable the group to discharge its legal liabilities and other obligations and to maintain the reserves required of it under this Act, it shall forthwith make up the deficiency or levy an assessment upon its members for the amount needed to make up the deficiency.

Tenn. Comp. R. & Regs. Ch. 0780-1-54-.18(1). Significant to the issue presented, the rules further provide, "If the group fails to assess its members or to other-wise [sic] make up [a] deficit" the Commissioner shall order it to do so. Tenn. Comp. R. & Regs. Ch. 0780-1-54-.18(3). Furthermore, the rules require that the members have joint and several liability for the obligations of the self-insured group.

In addition to the foregoing, the agreements entered into by the members of the Trust further empower the Commissioner to assess the membership. One of the relevant agreements is the

---

[10]The statute permits employers to pool their liabilities "for the purpose of qualifying as self-insureds as provided in subdivision (a)(2)," subject to certain requirement to qualify.

indemnity agreement entered into by the members.[11]  In addition to holding each and every member jointly and severally liable for any contributions and/or assessments made against the Trust, the indemnity agreement provides:

> In the event of a loss fund deficit and depletion of all available excess insurance, the Board *may adopt any plan it deems equitable for the elimination of such deficit*, including, without limitation, the assessment of all Members in the proportion which the contribution of each Member bears to the total contributions of all Members in the year in which such deficit occurs. (emphasis added).

Once the order was entered to place the Trust in liquidation, the Commissioner was empowered by the trial court to administer the Trust.  Pursuant to that order, the Commissioner supplanted the Board.  Accordingly, the Commissioner was not only empowered to act pursuant to her statutory authority, which included the authority arising from departmental rules and regulations, she was empowered with the authority afforded the Board by agreement of the members.

Appellants concede the Commissioner could assess the members to fund the deficit; nevertheless, they contend the Commissioner was restrained to assess the members in the proportion which the contribution of each member bears to the total contributions of all members in the year in which the deficit occurred.  The trial court made the determination that the only limitation on the Commissioner, or the Liquidators action on her behalf, was that the assessment be equitable.  Being in agreement with this conclusion, we must then ascertain whether the methodology employed is equitable.

Mark Jaquish, Special Deputy Liquidator, was responsible for the assessment determination. He testified at length at the hearing before the trial court.  The substance of his testimony can be divided into two general components.  One was his evaluation of the 2002 and 2003 premiums paid by the members of the Trust, which was established by individual agreement between each member and the Trust prior to liquidation.  The other was the assessment methodology employed by the Liquidator to fund the deficit.

Mr. Jaquish identified errors discovered during his examination of the Trust.  They included, but were not limited to, mistakes in job classifications and drug free work place premium deductions for members not classified by the Department of Labor as a drug free work place.  Tenn. Code Ann. § 50-6-418 allows employers who implement a qualified drug-free workplace program to receive a credit against their premium rates.  The Department of Labor administers the drug-free workplace certification for employers in Tennessee.  After checking with the Department of Labor, the Deputy Liquidator determined twenty-nine of the members were erroneously receiving full credit for having a drug-free workplace.  Mr. Jaquish also identified errors in the calculation of each member's

---

[11] Tenn. Comp. R. & Regs. Chapter 0780-1-54-.04 (2) (e) requires all parties agree to joint and several liability for any contributions and assessments made against the Group.

experience modification factors, which are unique to each member of the Trust and based upon the three prior years of claims history experience.[12]

He further explained that the errors produced the inequity of some members paying a smaller premium than they should have paid while others were paying a larger premium than they should have paid. As a consequence of these errors, a significant number of the members were paying a disproportionate share of the financial obligation of the Trust and if he were to base the assessments on the flawed premium structure previously employed, it would perpetuate and exacerbate an inequitable burden on some members.

After explaining the significance of the errors found and the necessity of making corrections, Mr. Jaquish explained the methodology he employed to assess the members to fund the deficit.

> The method I used, which was recommended in my examination report, in determining what the assessment was for each member makes adjustments for the errors that the trust made in calculating their premium in accordance with NCCI procedures.

> I felt that it was important – if I was in a position to recommend to the commissioner to order an assessment of its members, then that assessment needed to be made in an objective manner that was fair and equitable to all members, and should not be based on the premium as originally charged by the trust because, in my opinion, we found that to be – the procedures to be inconsistent and arbitrarily applied, and some members were given preferential treatment, some members, I feel, may have been discriminated against, and in an effort to be fair and equitable to all, I thought it important to rely solely on the premium calculation procedures as outlined in the NCCI manual, which is the manual the department requires all trusts to use in calculating the workers' compensation premium.

In explaining his belief that some members were discriminated against, Mr. Jaquish testified:

> When we reviewed each member's – what's called an underwriting file, it has the basic information of each employer's operations. In many of the members' files we reviewed, there were numerous documents in the files of the employers that received scheduled credits or discounts where the information in the file suggested that not only credits should not have been given, but they didn't even meet the underwriting qualifications for being admitted to the trust as a member.

---

[12]Mr. Jaquish explained the Trust had not consistently calculated the experience of each member based upon the three prior years.

Mr. Jaquish explained that the methodology employed incorporated applicable criteria established by NCCI and rules and regulations of the Tennessee Department of Commerce and Insurance. He further explained the methodology involved a two-step assessment that establishes the correct contribution to be provided by each member of the Trust and then apportions the liability among the members in amounts necessary to fund the deficit. The premium corrections produced $825,000 of additional revenue to fund the Trust. Then the remaining deficit, approximately two million dollars, was funded by assessing the members in proportion to the corrected premium obligation of each member.

Appellants contend the Commissioner was without authority to "correct" the premiums because the premiums were established by agreement between each member and the Trust. Second, the Appellants contend the Commissioner erred by assessing the members in proportionate amounts based upon the "corrected" premiums. We find both contentions without merit.

The Appellants argue the court must give effect to the parties' intentions as reflected in the written contracts of insurance, citing *Black v. Aetna Ins Co.*, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995), and contending such contracts cannot be modified absent fraud, overreaching or unconscionability, citing *Quintana v. Tenn. Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989). The fallacy in this argument is that the authorities are inapplicable. *Black* and *Quintana* pertain to agreements between an insured and an insurance company, which is not the case here. That is because Appellants are self-insured and they, along with all members of the Trust, are jointly and severally liable for the obligations of the trust. Appellants' joint and several obligations arise from two sources. One is the Indemnity Agreement among the members of the Trust. The other is Tenn. Comp. R. & Regs. Ch. 0780-1-54-.04(2)(e), which mandates that each member of a self-insured group trust be jointly and severally liable for the obligations of the trust.

Finding no prohibition against the Liquidator correcting errors in the premiums to be paid by members of the Trust, we affirm the trial court's conclusion that the assessment of the members proportionate to the corrected premium obligation of each member was equitable.

The judgment of the trial court is affirmed in all respects and this matter is remanded with costs of appeal assessed against the Appellants, for which each shall be jointly and severally liable.

 

 

 

_____
FRANK G. CLEMENT, JR., JUDGE