
IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 23, 2017 Session

## IN RE ESTATE OF BESSIE ADCOCK BINGHAM

**Appeal from the Chancery Court for Bedford County**
No. 28900     James B. Cox, Chancellor

_____

### No. M2016-01186-COA-R3-CV

_____

This appeal arises from the probate administration of an estate. The principal issues concern a certificate of deposit and the trial court's approval of attorney fees paid from the estate to the estate's first attorney. The trial court awarded the certificate of deposit to the decedent's son, finding that the certificate of deposit passed to the son as the surviving joint tenant. With respect to attorney fees paid to estate's first attorney, the trial court approved fees in the amount of $12,400 and disapproved fees in the amount of $7,600. The decedent's daughter appealed. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

W. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Peggy Artley.

Megan Kingree Trott, Shelbyville, Tennessee, for the appellee, William S. Bingham.

### OPINION

Bessie Adcock Bingham ("the decedent") died on July 14, 2011, at the age of 92. She was survived by her two children, Peggy Bingham Artley ("Petitioner") and William S. Bingham. In her Last Will and Testament, the decedent divided her estate equally between her children and appointed Mr. Bingham the executor ("Executor"). Executor hired attorney Wayne Bomar to assist with the probate of the estate. Executor's contract with Mr. Bomar, dated July 20, 2011, included a list of the services Mr. Bomar would provide for the estate at a fee of 5% of the gross estate as determined by the Tennessee Department of Revenue Inheritance Tax Return. The contract also listed services that would not be included at the agreed percentage fee but rather at his hourly fee of $200,

including, *inter alia*, contested lawsuits by any beneficiary or representative of any beneficiary.

On July 22, 2011, the decedent's will was admitted to probate in the Bedford County Chancery Court. Executor filed his initial inventory and accounting ("Original Accounting") in February 2012. Among the assets listed in the Original Accounting was a certificate of deposit in the amount of $80,000 that the decedent acquired from Regions Bank in 2003. Three months later, Petitioner commenced this action by filing a Petition to Remove Executor, Seek Accounting, Object to Inventory, and to Inspect Estate. Executor filed an answer to the petition, denying that he had defaulted in his duties as Executor. Following a hearing on the petition, the trial court granted Petitioner access to the estate. Thereafter, substantial discovery ensued.

On November 1, 2012, Petitioner filed a motion to disqualify Mr. Bomar as the attorney for the estate, alleging that Mr. Bomar had assumed an adversarial role for Executor's individual interests and that he had taken actions on behalf of Executor that were adverse to the obvious interests of Petitioner. Mr. Bomar subsequently submitted an order voluntarily withdrawing. On November 9, 2012, Ralph McBride Jr. entered an appearance as the attorney for the estate and Andrew C. Rambo entered an appearance on behalf of the individual interests of Executor.

Following protracted proceedings, Executor filed his "Interim Accounting" on July 23, 2014, in which Executor had omitted the certificate of deposit. Executor explained the omission of the certificate of deposit as follows: "The [Original Accounting] in this cause included as an asset a Regions Bank time deposit/IRA . . . in the amount of $80,000. Further investigation indicates that this account was jointly owned by the decedent and [Executor]. This account is therefore not included in this Interim Accounting."

Petitioner filed an objection to the Interim Accounting in which, as relevant on appeal, she objected to Executor's failure to include the certificate of deposit as an asset of the estate and an expense of $20,000 in attorney fees paid from the estate to Mr. Bomar. A hearing on Petitioner's objections was held on January 22, 2015, at which Petitioner, Executor, and Mr. Bomar testified.

With respect to the certificate of deposit, it was undisputed that the account was jointly held by the decedent and Executor. Executor argued that, following the death of the decedent, the certificate of deposit passed to Executor by right of survivorship and was not an asset of the estate. In support of his position, Executor presented the documents the bank utilized in establishing the account. The following documents were admitted into evidence: (1) Time Certificate of Deposit, (2) Regulation CC Funds Availability Disclosure, (3) Deposit Account Agreement and Disclosure, and (4) an untitled, one-page document that the parties referred to as the Signature Card.

The Time Certificate of Deposit states that the "account name" is "Bessie A. Bingham or Billy Bingham."

The Regulation CC Funds Availability Disclosure states that the "account holder" is "Bessie A. Bingham or Billy Bingham."

The Deposit Account Agreement and Disclosure states at the top of page one that the depositor is "Bessie A. Bingham or Billy Bingham." On the middle of page two, the Deposit Account Agreement and Disclosure reads as follows:

> **MULTIPLE-PARTY ACCOUNTS.** This section pertains to multiple party accounts:
>
> (A) **Joint Account Ownership**. An account with two or more Account Holders is a joint account. Unless you designate otherwise on the Signature Card, joint Account Holders will be considered joint tenants with right of survivorship.
>
> > (1) **Joint Tenants With Right of Survivorship**. If your Account is a joint account with right of survivorship, upon the death of one of the joint Account Holders, that person's ownership interest in the Account will be immediately pass to the other joint Account Holder(s).
> >
> > (2) **Joint With No Right of Survivorship**. If your Account is a joint account with no right of survivorship (Joint as Tenants in Common), upon the death of one of the joint Account Holders, that person's proportionate ownership interest will pass to the estate of the deceased Account Holder.

(Emphasis in original).

The Signature Card states that the account holders are "Bessie A. Bingham or Billy Bingham" and designates the account's "ownership type" as "**Joint (Right of Survivorship)**." (Emphasis in original). The Signature Card provides a space for the signature of the decedent and a space for the signature of Executor, neither of which contain a signature. In clarifying the absence of their signatures, Executor testified that, although he was not present when the decedent purchased the certificate of deposit, the decedent and he signed the Signature Card and returned it to the bank. Executor further testified that when he attempted to obtain a copy of the signed Signature Card, the bank informed him that it "[didn't] keep anything over seven years . . . ."

- 3 -

Executor argued that the account documents clearly and unambiguously state that the funds were held by the decedent and Executor as joint tenants with right of survivorship. Executor further argued that the account's designation of right of survivorship is "conclusive evidence . . . of the intentions of all named that title vests in the survivor," pursuant to Tenn. Code Ann. § 45-2-703(e)(1). Thus, Executor insisted that the funds were not part of the decedent's estate and did not pass under the will.

Petitioner argued that Executor could not rely on the conclusive presumption established in Tenn. Code Ann. § 45-2-703(e)(1) because the Signature Card was not signed by the decedent. According to Petitioner, the decedent was mentally alert and physically capable of executing the paperwork related to the certificate of deposit; thus, the absence of the decedent's signature on the Signature Card evinces that the decedent did not agree with the manner in which the account was established, that being a joint account with right of survivorship. Petitioner further argued that, without any signed documents designating that the account carried a right of survivorship, there is a rebuttable presumption that the "property held under the title, joint tenancy, carries no right of survivorship," pursuant to Tenn. Code Ann. § 45-2-703(e)(4). Petitioner contended that Executor failed to overcome that presumption. Thus, she insisted that the funds were part of the decedent's estate and should pass under the will rather than to Executor.

As to the issue of attorney fees, Executor testified that the estate paid Mr. Bomar $20,000 for legal services he provided to the estate. Executor stated that he was satisfied with the services provided by Mr. Bomar, that the services rendered were of value to the estate, and that he believed the $20,000 fee was reasonable.

For his part, Mr. Bomar testified at length as to the difficulty of the case. Specifically, Mr. Bomar testified that Petitioner employed four different attorneys while he represented the estate, which caused his work to increase because it was necessary to repeat work following the employment of each new attorney. In addition to Petitioner's frequent changes of attorneys, Mr. Bomar testified that he also had to expend time to deal with Petitioner's unauthorized removal of personal property from the decedent's house. He further noted that there were numerous unsuccessful attempts to settle the estate during his representation. Mr. Bomar provided an itemization of his time spent on the case, showing that he spent 72 hours defending this action. With respect to the itemization, Mr. Bomar testified that it was a reconstruction of the time he spent representing the estate and that he did not keep contemporaneous time records where he represented the estate due to the percentage fee agreement in the contract.

Petitioner argued that Mr. Bomar's percentage fee arrangement was "per se unlawful and a violation of the Tennessee Rules of Professional Conduct." Petitioner also argued that Mr. Bomar's fees were excessive because Mr. Bomar was protecting the individual interest of Executor at the expense of the estate. According to Petitioner, Mr.

Bomar's fees should have been about the same as the fees of her first attorney, John Bobo.

In ruling from the bench, the trial court concluded that the certificate of deposit properly passed to Executor as the surviving joint tenant. Specifically, the trial stated:

> Even without the signatures appearing, the presumption given rise to by [Tenn. Code Ann. §] 45-2-703(e)(1) is still in play. And it is a conclusive presumption. And the Court does not find that it's been overcome. As it relates to that analysis, the Court honestly will credit [Petitioner's] testimony about her mother's mental state at the time in that circumstance.

With respect to Mr. Bomar's attorney fees, the trial court reviewed the fee requests for reasonableness and approved fees in the amount of $12,400 and disapproved fees in the amount of $7,600. The court ordered that the $7,600 be treated as a distribution to Executor and taken into account upon final settlement of the estate.

The trial court entered a written order consistent with its bench ruling on March 13, 2015. After further protracted proceedings, an order closing the estate was entered on May 6, 2016. Petitioner timely appealed.

Although not stated exactly as such, Petitioner raises two issues: 1) whether the trial court erred in holding that the certificate of deposit carried a right of survivorship; and 2) whether the trial court erred in approving Mr. Bomar's attorney fees.

### STANDARD OF REVIEW

The issues on appeal arise from a bench trial. "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 598-99 (Tenn. Ct. App. 2006). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

ANALYSIS

## I. THE CERTIFICATE OF DEPOSIT

Petitioner contends that the trial court erred in holding that the certificate of deposit carried a right of survivorship and, therefore, passed to Executor following the death of the decedent.

Our analysis of this issue is controlled by Tenn. Code Ann. § 45-2-703, as that statute governs deposits to bank accounts and also certificates of deposits in the names of two or more persons, such as the certificate of deposit here.[1] *Guess v. Finlay*, No. E2011-00947-COA-R3-CV, 2012 WL 1302779, at *5 (Tenn. Ct. App. Apr. 16, 2012). That statute provides, in pertinent part, as follows:

> (a) When a deposit has been made or is hereafter made, in any bank, in the names of two (2) or more persons, payable to either, or survivor, the deposit, or any part of the deposit, or any interest or dividend on the deposit, may be paid to either person, whether the others are living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. . . .
>
> . . . .
>
> (c) As used in subsections (c)-(f), "multiple-party deposit account" means a deposit account, including a certificate of deposit, established in the names

---

[1] Although neither party disputes that the certificate of deposit should be analyzed under Tenn. Code Ann. § 45-2-703, we acknowledge that this court has reached differing conclusions on the applicability of Tenn. Code Ann. § 45-2-703 to certificates of deposit. For instance, in *Roberts v. Roberts*, this court held that "[t]he statute does not apply to certificates of deposit which require no signature card and provide no withdrawal until maturity." *Roberts v. Roberts*, 827 S.W.2d 788, 796 (Tenn. Ct. App. 1991). Several years later, this court found that "*Roberts* was wrongly decided" because the "plain language of the statute extending its application to 'multiple-party deposit account[s]' expressly includ[es] 'a certificate of deposit, established in the names of, payable to, or in form subject to withdrawal by two (2) or more natural persons. . . .'" *Guess v. Finlay*, No. E2011-00947-COA-R3-CV, 2012 WL 1302779, at *11 (Tenn. Ct. App. Apr. 16, 2012), *no appeal filed* (quoting Tenn. Code Ann. § 45-2-703(c)). However, a recent decision of this court cited to our holding in *Roberts* and held that an appellant's reliance on Tenn. Code Ann. § 45-2-703 for determining ownership of a certificate of deposit was misplaced. *In re Estate of Kirkman*, No. W2016-00759-COA-R3-CV, 2017 WL 626826, at *4 (Tenn. Ct. App. Feb. 15, 2017), *no appeal filed*.

We, like the *Guess* court, decline to ignore the plain language of the statute extending its application to "a certificate of deposit, established in the names of, payable to, or in form subject to withdrawal by two (2) or more natural persons," such as the certificate of deposit at issue here. Tenn. Code Ann. § 45-2-703(c); *Guess*, 2012 WL 1302779, at *5.

of, payable to, or in form subject to withdrawal by two (2) or more natural persons, or any of them, including, but not limited to, an account of the type described in subsection (a).

(d)(1) When opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents that enable the depositor to designate ownership interest therein in terms substantially similar to the following:

> (A) Joint tenants with right of survivorship;
> (B) Additional authorized signatory; and
> (C) Other deposit designations that may be acceptable to the bank.

(2) Account documents that enable the depositor to indicate the depositor's intent of the ownership interest in any multiple-party deposit account may include any of the following:

> (A) The signature card;
> (B) The deposit agreement;
> (C) A certificate of deposit;
> (D) A document confirming purchase of a certificate of deposit; or
> (E) Other documents provided by the bank or deposit institution that indicate the intent of the depositor.

(e) Accounts described in subsection (c) shall establish the following interests:

(1) A designation of joint tenants with right of survivorship, or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor;

. . . .

(4) In the absence of any specific designation in accordance with subsection (d), property held under the title, tenancy by the entireties, carries a right of survivorship; property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated. Any other person to whose order the accounts or certificate of deposit is subject shall be presumed to have power of attorney with respect to the account or certificate of deposit and not to be an owner of the account or certificate of deposit. The presumptions may be rebutted by clear and convincing evidence presented in the course of legal or equitable proceedings. . . .

(f) Without incurring any liability, any bank may, but shall not be required to, provide to depositors disclosures in form similar to the following:

(1) JOINT TENANTS WITH RIGHT OF SURVIVORSHIP. This designation means that the deposit account or certificate of deposit shall become the property of each owner as joint tenants, and that the survivor is entitled to all moneys in the account or represented by the certificate even if the first person to die had a will specifically directing disposition to someone else. The bank may release all moneys in the account or represented by the certificate to, or honor checks or orders drawn by, or withdrawal requests from, the survivor upon the death of any joint tenant; . . . .

(2) ADDITIONAL AUTHORIZED SIGNATORY. This designation means that the person named as additional authorized signatory shall have authority during the lifetime of one (1) or more owners to withdraw moneys from the deposit account or represented by the certificate of deposit. Moneys remaining in the account or represented by the instrument upon the owner's death shall become part of the deceased owner's estate, subject to the deceased person's will or applicable law if the deceased person left no will. The bank may release all moneys in the account or represented by the certificate to, or honor checks or orders drawn by, or withdrawal requests from, the authorized signatory until notified of revocation of the authority.
(g) Subsections (c)-(f) shall not apply to any accounts in existence prior to January 1, 1989.

Tenn. Code Ann. § 45-2-703(a), (c)-(f).

Petitioner argues that Executor cannot rely on the conclusive presumption established by Tenn. Code Ann. § 45-2-703(e)(1) because the documents submitted into evidence, and specifically the Signature Card, do not bear the signature of the decedent. We find this argument unpersuasive.

As applicable here, Tenn. Code Ann. § 45-2-703(d)(1) requires a bank to "utilize account documents that enable the depositor to designate ownership interest" when establishing an account in the names of two or more people. The statute expressly provides that such account documents "may include any of the following: (A) The signature card; (B) The deposit agreement; (C) A certificate of deposit; (D) A document confirming purchase of a certificate of deposit; or (E) Other documents provided by the bank or deposit institution that indicate the intent of the depositor." Tenn. Code Ann. § 45-2-703(d)(2). Conspicuous by its absence in Tenn. Code Ann. § 45-2-703 is a requirement that any documents referred to therein be signed by anyone.

In accordance with Tenn. Code Ann. § 45-2-703(d)(1), Regions Bank utilized account documents that enabled the decedent to designate ownership interest in the certificate of deposit. Specifically, pursuant to the Deposit Account Agreement and Disclosure, the decedent and Executor would hold the account as joint tenants with it a right of survivorship unless designated otherwise on the Signature Card. The Signature Card confirmed that the account was held as joint tenants with right of survivorship. In our view, this ends our inquiry regarding ownership of the certificate of deposit. This is because, under the clear language of the statute, the decedent's intent that the certificate of deposit carries with it a right of survivorship is conclusively established by the documents utilized by the bank. Tenn. Code Ann. § 45-2-703(e)(1); *Guess*, 2012 WL 1302779, at \*11. Moreover, there is no proof, or even an allegation, that, in purchasing the certificate of deposit, the decedent did so because of fraud, duress, or undue influence. Thus, there is nothing more that needs to be said in resolving this aspect of the appeal.

Under the record before us, the wording of the certificate of deposit is "conclusive evidence . . . that title vests in the survivor." Tenn. Code Ann. § 45-2-703(e)(1). Accordingly, we hold that the certificate of deposit properly passed to the Executor by operation of law and, therefore, was properly excluded by the trial court from the probate proceedings.

## II. ATTORNEY FEES

We turn next to Petitioner's assertion that the trial court erred by approving payment of Mr. Bomar's attorney fees.

Decisions regarding an award of reasonable attorney's fees are generally within the discretion of the trial court. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). We review discretionary decisions pursuant to the "abuse of discretion" standard of review. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the trial court. *Id*. Nevertheless, the abuse of discretion standard of review does not immunize a lower court's decision from any meaningful appellate scrutiny. *Id*. When reviewing a discretionary decision, the appellate court is to determine, where applicable, whether there is a factual basis for the decision in the record, whether the court correctly identified and properly applied the relevant legal principles, and whether the decision is within the range of acceptable alternative dispositions. *Id*. at 525.

In this case, Executor requested approval of attorney fees he paid to Mr. Bomar in the amount of $20,000. The trial court approved fees in the amount of $12,400 and disapproved fees in the amount of $7,600. The court's ruling from the bench reads, in pertinent part, as follows:

[T]he cultural history of fees within our judicial district has long been since they were – they were charged as percentages. It's just with the recent advent of greater scrutiny on those that we have come to even think too much about that. And I think probably, rightfully, that we should be thinking about that if -- if as lawyers we want to have credibility going forward. And [Counsel for Petitioner] is right, and I cannot escape the finding that there was nothing before today that would have shown what Mr. Bomar did. The only real question I have in my mind is does the fact that I now have it satisfy where we are. Does it -- because it did appear today, does that mean that it's automatically disqualified or not. I have no idea what minds brighter than mine would do with that going up. I -- I just don't know.

I can tell you that there are even still in existence today local rules that contemplate a percentage as being an appropriate matter. The difficulty of this estate cannot be understated. The potential risks associated with trying to tightrope between these two vigorous litigants cannot be understated.

As it relates to the Court's analysis adding to those statements, I must respectfully disagree with [Counsel for Petitioner's] analysis of parallelism in this circumstance. I don't think that there is an automatic parallel between what Mr. Bobo's fee was as it relates to reasonability versus what Mr. Bomar's fee should be because the parallel conduct only occurs after we got into the vigorous disagreement side of it. It really has nothing to do with making sure we have the rest of it taken care of. And by the rest of it, I mean the initial conference, the initial filing of papers, those things that go along with dealing with difficulties like these. . . .

So I have an affidavit now that says 72 hours, which [Counsel for Petitioner] believes is too long, and I -- and I understand the thought process behind that, especially in light of Mr. Bobo's fee request. Having heard what I've heard since 9:00 o'clock this morning, it strikes me as being more reasonable than I might have first anticipated it being. I think the Court, even under that rule, would have an obligation . . . to review those fees for – requests for reasonableness. . . .

Looking at [the contract] and [the itemization of hours] . . . the Court believes that automatically the miscellaneous provision on the last page of [the itemization of hours] should be disregarded, which would drop his time frame from 72 plus hours down to 62 hours. In reviewing the rest of the approximate hours, although they may appear based upon [Counsel for Petitioner's] analysis to be too much, the Court finds that they're

- 10 -

appropriate and within the appropriate standard to be applied here. The Court would grant a fee consistent with 62 hours at Mr. Bomar's hourly rate, which was communicated to [Executor] at the time of the letter at $200 an hour. The Court's referencing [the contract] as it relates to that.

When folks disagree and cannot come to reasonable terms, it automatically gets more expensive, especially in these settings.

Petitioner argues that the trial court erred in authorizing any fee to be paid by the estate. Alternatively, Petitioner argues that Mr. Bomar's fee award is excessive. We will discuss each argument in turn.

A.

Petitioner asserts that the trial court should not have approved any of Mr. Bomar's fees because his contract with Executor provided that his fee was based on a percentage formula. Petitioner's argument, as we understand it, is that this court's opinion in *In re Estate of Thompson*, No. M2011-00411-COA-R3-CV, 2012 WL 912859 (Tenn. Ct. App. Mar. 14, 2012) *perm. app. denied* (Tenn. Mar. 14, 2012), stands for the legal proposition that charging a fee based on a percentage formula in a probate matter is "per se unlawful and violate[s] Rule 1.5 of the Rules of Professional Conduct." We disagree.

Contrary to the Petitioner's assertion, in *Thompson*, we did not hold that a percentage fee in an estate is per se invalid; rather, the court held that the trial court erred by relying primarily on a percentage formula provided in a local rule without considering whether the fee was reasonable in accordance with the factors set forth in Rule 1.5(d) of the Rules of Professional Conduct. *See Thompson*, 2012 WL 912859, at *6-7.[2] Moreover, Rule 1.5(d) identifies only two types of prohibited fees, contingency fees in certain domestic cases and contingent fees in criminal cases, neither of which are applicable here. Tenn. Sup. Ct. R. 8, RPC 1.5(d).

---

[2] In *Thompson*, the trial court approved attorney fees for an estate's attorney based on the percentage formula set forth in a local rule. *Thompson*, 2012 WL 912859, at *7. On appeal, this court found that the trial court "stray[ed] beyond the applicable legal standards" by explicitly relying on the percentage formula set forth in the local rule. *Id*. (quoting *Lee Med.*, 312 S.W.3d at 524). The court explained that regardless of whether the local rule concerning the fee to be awarded to an attorney is characterized as a "guide," a trial court is not permitted to rely on such a percentage formula in setting the fee but must instead utilize "the individualized weighing process mandated by the Supreme Court." *Id*. at *6. The *Thompson* court then went on to determine the reasonable fee that the attorney was owed for the services rendered in the case, considering, among other things, the hours worked by the attorney, any extraordinary services rendered, "the novelty and difficulty of the questions involved," and "the fee customarily charged in the locality for similar legal services." *Id*. at *10-11 (quoting Tenn. Sup. Ct. R. 8, RPC 1.5).

In this case, the trial court specifically stated that it had an obligation to review the Mr. Bomar's fee requests for reasonableness, regardless of the local rule. Petitioner has cited no other authority for her proposition that charging percentage fees are per se unlawful in probate cases such that no attorney fees should be awarded, and we have found none. Accordingly, we find this issue without merit.

B.

Alternatively, Petitioner asserts that Mr. Bomar's fee award is excessive. As to this issue, Petitioner insists that the record is "replete with examples where it is clear that Mr. Bomar was protecting the individual interests of [Executor] at the expense of [Petitioner]" and that Mr. Bomar's itemization of hours was not credible. Instead of including facts with citations to the record in support of these allegations, Petitioner merely offers conclusions such as "these points seem obvious" and "[a] review of the matters contained in the Record . . . would justify the reasonable conclusion that certainly no more than five or ten hours could have been expended by Mr. Bomar's work, most of which was devoted to [Exectuor's] holy war with his previously beloved sister, [Petitioner]." By failing to cite to any portions of the record in support of this claim of error, Petitioner has waived her argument as to this issue. *See* Tenn. R. App. P. 27(a)(7) (requiring briefed arguments to include "appropriate references to the record").

Despite Petitioner's waiver of this issue, our review of the record demonstrates that the trial court did not abuse its discretion in its approval of Mr. Bomar's attorney fees. The trial court correctly identified the applicable legal principle when reviewing Mr. Bomar's fee requests of $20,000, that being the reasonableness of the fee in consideration of the factors set forth in Rule 1.5(d) of the Rules of Professional Conduct. The trial court then properly applied that principle to the facts of this case to support its conclusion that a fee in the amount of $12,400, consistent with 62 hours at Mr. Bomar's hourly rate of $200 pursuant to his contract with Executor, was a reasonable fee for Mr. Bomar's legal services considering, *inter alia*, the difficulty of this estate.

In view of the facts and circumstances of this case, we find the fee approved by the trial court within the range of acceptable alternative dispositions. *See Lee Med.*, 312 S.W.3d 524. Therefore, the trial court's award of fees in the amount of $12,400 to Mr. Bomar is affirmed.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Peggy Bingham Artley.

_____
FRANK G. CLEMENT, JR., P.J., M.S.