IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2019 Session

## IN RE CONSERVATORSHIP OF LAYLON EUGENE PERRY

Appeal from the Chancery Court for Cannon County
No. 14-142      Howard W. Wilson, Chancellor

_____

### No. M2018-00971-COA-R3-CV

_____

In this conservatorship action, the trial court determined that the evidence clearly and convincingly established that the respondent had a disability but did not establish that the respondent needed a conservator. The petitioner appealed. Having reviewed the evidence presented at trial, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD R. DINKINS, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ANDY D. BENNETT, J., joined.

Rodney M. Scott and William Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Baker Bush.

Eric J. Burch, Manchester, Tennessee; Gilbert W. McCarter, II, and Anthony Cain, Murfreesboro, Tennessee, for the appellees, Laylon Eugene Perry and Jimmy Hollandsworth.

### OPINION

On February 5, 2014, Laylon Eugene Perry executed a warranty deed conveying 29 acres of land in Cannon County to his employer, Jimmy Hollandsworth, for $15,000. On October 3, Mr. Perry's niece, Amanda Bush, filed a petition pursuant to Tennessee Code Annotated section 34-3-104 seeking to be appointed conservator for Mr. Perry. Mr. Perry filed a statement with the court denying he was in need of a conservator.

On November 4, 2014, Ms. Bush moved to amend the petition to request that the sale of the property to Mr. Hollandsworth be set aside. In her amended petition filed on November 22, Ms. Bush alleged that Mr. Hollandsworth took advantage of Mr. Perry's diminished mental capacity by purchasing the property at a price significantly below

market value.  She further claimed that, as a result of the sale, Mr. Perry was "essentially homeless."  Mr. Perry filed a response denying all averments in the amended petition.

On November 25, 2014, the trial court appointed a guardian ad litem to review Mr. Perry's medical records, discuss his "physical and mental condition with any physician, psychologist, or other health care provider who may have pertinent information," and "impartially investigate and report the facts" to the court.  The guardian ad litem moved the court to appoint a psychologist or other appropriate professional to evaluate Mr. Perry, and in March 2015, an agreed order was entered providing that Mr. Perry be evaluated by Dr. Paul Foster.  Mr. Perry met with Dr. Foster, and Dr. Foster's report was filed with the court in October 2015.

Thereafter, Ms. Bush moved to substitute Baker Bush, a cousin of Mr. Perry, as petitioner, and the court granted the motion.  On January 18, 2017, Mr. Bush moved to amend the amended petition to add Mr. Hollandsworth as a respondent, and an agreed order was entered granting the motion and bifurcating the issue of the necessity for the appointment of a conservator from the issues relating to setting aside the sale of the property.

Following a trial held on August 7, 2017, on the conservatorship, the court ruled that Mr. Perry suffered from a mental disability and was in need of a partial conservator as contemplated by Tennessee Code Annotated section 34-1-126.  In its memorandum and order, the trial court relied in large part on the findings of the guardian ad litem and Dr. Foster that Mr. Perry did not need a conservator for daily living but would need a partial conservator to make decisions regarding his property.  Accordingly, the court established a partial conservatorship for the care of Mr. Perry's property.  Although the court ruled in favor of Mr. Bush that Mr. Perry was in need of a conservator, it also determined that Mr. Bush was "not the proper person to serve in that position."  The court appointed Attorney Matthew Cowan of the Cannon County bar as Mr. Perry's partial conservator.

On October 24, 2017, Mr. Bush filed a motion to alter or amend, requesting that the court declare the September 29 memorandum and order a final order, or alternatively:

> [T]hat the Order entered September 29, 2017, be altered or amended pursuant to T.R.C.P. Rule 59.04 on grounds that the Court's findings of diminished capacity as to Mr. Perry's ability to make financial decisions and manage his property are patently inconsistent with a finding that the Petitioner cannot serve as Conservator as the nearest relative coming forward to do so, due to Mr. Perry expressing a cognitive, meaningful conclusion that he does not want Petitioner to serve as Conservator.

The guardian ad litem filed a document styled "Joinder of the Guardian Ad Litem to Motion to Alter or Amend" in which the guardian ad litem requested that "the court allow the real property action to remain open pending the investigation of the Conservator and the Guardian ad Litem."

The trial court heard the motion to alter or amend on November 6, 2017, and entered an order on April 25, 2018, denying the motion. After reconsidering the evidence presented at trial, however, the court on its own motion amended the September 29 order, determining that "there is simply not enough proof indicating that Mr. Perry is 'in need' of a conservator for either his person or his property under Tenn. Code Ann. § 34-3-101, *et seq.*, despite the fact that the evidence may show he is a 'disabled person.'" The court based its decision on the finding that "Mr. Perry has the necessary ability to conduct activities of daily living, live on his own, drive, and even maintain regular employment with Mr. Hollandsworth."

As for the sale of the property, the court found:

[T]he transaction between [Mr. Perry] and Mr. Hollandsworth relating to the sale of the farm that he had inherited from his father does not clearly indicate that he was taken advantage of or that he transferred the farm without thoughtful contemplation or valuable consideration. In fact, Mr. Perry seemed pleased with the transaction as he received a promise from Mr. Hollandsworth that he would be permitted to live in the property for the remainder of his life (this was later formalized as a life estate conveyed to Mr. Perry on October 18, 2016), a purchase price of $15,000.00, a Kabota tractor, and a late-model Dodge pickup. Further, Mr. Perry received the promise from Mr. Hollandsworth that he would renovate the home located on the farm so that Mr. Perry could live there comfortably.

. . . . Such an [arrangement] certainly appears to be the by-product of Mr. Perry's own thoughtful planning and is evidence that he does not need a conservator to manage his affairs.

Thereafter, the court discharged the guardian ad litem and declared the order a final judgment. Mr. Bush appeals.

### STANDARD OF REVIEW

A petition for the appointment of a conservator requires the lower court to "find by clear and convincing evidence that the respondent is fully or partially disabled and that the respondent is in need of assistance from the court." Tenn. Code Ann. § 34-1-126. Therefore, on appeal, "we must determine whether the combined weight of the facts, as supported by a preponderance of the evidence, establishes clearly and convincingly that a

conservatorship [is] warranted." *In re Conservatorship of Jewell*, No. M2008-02621-COA-R3-CV, 2009 WL 4573420, at *9 (Tenn. Ct. App. Dec. 4, 2009).

Appellate courts review the trial court's factual findings *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 691–92 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006). Our review of a trial court's determinations on issues of law is *de novo*, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

The dispositive issue on appeal is whether the trial court erred in determining that Mr. Perry did not need a conservator.

The fact that an individual is found to have a disability does not automatically lead to the conclusion that he or she will need a conservator. *In re Conservatorship of Groves*, 109 S.W.3d 317, 331 (Tenn. Ct. App. 2003). A respondent's need for a conservator depends upon his or her capacity to perform necessary tasks, a capacity which may or may not be affected by the respondent's disability. *Id.* at 333.

"[C]apacity encompasses two concepts—functional capacity and decision-making capacity." *Id*. at 334. On one hand, functional capacity, which is not at issue here, relates to a person's ability to perform routine daily tasks such as feeding and dressing oneself. *Id*. Decision-making capacity, on the other hand, "involves a person's ability (1) to take in and understand information, (2) to process the information in accordance with his or her own personal values and goals, (3) to make a decision based on the information, and (4) to communicate the decision." *Id*. at 335. This court further explained in *In re Conservatorship of Groves*:

> Persons frequently display different levels of decision-making ability. A person may be simultaneously capable and incapable with respect to different types of decisions. Courts routinely apply different standards for determining capacity depending on the nature of the decision or action involved. Accordingly, capacity should be determined on a decision-specific basis.

*Id*. at 336 (footnotes omitted).

- 4 -

Mr. Bush primarily argues that Dr. Foster's psychological report, which was entered into evidence at trial, clearly and convincingly established that Mr. Perry needed a conservator for his non-day-to-day financial decisions.  Mr. Bush has misinterpreted Dr. Foster's findings. Dr. Foster determined that, although Mr. Perry had some impairment with regard to his "executive functioning," the impairment did not "represent a significant detriment to his basic daily functioning and decision making capacity." Nevertheless, Dr. Foster concluded that Mr. Perry

> will likely experience greater difficulty in making decisions that require memory for facts or previous events, manipulation of information, that are based on multiple subcomponents, and that involve more extensive processing of information. Based on the present findings it is felt that his capacity to make financial decisions is diminished, resulting in the patient being at risk for being taken advantage of and making poor financial decisions. However, his capacity to make financial decisions is not diminished to the extent such that he cannot live independently.

Thus, Mr. Perry would only need a conservator if his circumstances required him to make complex financial decisions.  Upon considering the testimony and other evidence regarding Mr. Perry's circumstances, the court correctly determined that he would not need a conservator.[1]

Mr. Perry testified that he was 43 years old, and he had a driver's license and a full time job working for Mr. Hollandsworth.  Mr. Perry said he assisted Mr. Hollandsworth with farm chores for $10 an hour, a job he held for 20 years, and he lived on one of Mr. Hollandsworth's properties rent free.  Mr. Perry explained that when his father died, he inherited the 29-acre tract with his childhood home but the home had no heat and air or running water.  According to Mr. Perry, "I didn't have the money to fix it up, and I had a lifetime to live in it that way."  A number of photographs were entered into evidence showing the dilapidated condition of the home.

Mr. Perry testified that he and Mr. Hollandsworth entered into an agreement whereby Mr. Hollandsworth would purchase the property in exchange for $16,000, a tractor worth $15,000, and a truck worth $10,000.  Though a deed entered into evidence,

---

[1]Mr. Bush contends the trial court erred in excluding from evidence Dr. Foster's sworn interrogatories clarifying the findings in his psychological report.  A trial court's decision to exclude or admit evidence is a discretionary decision, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999), and we have determined that the trial court did not abuse its discretion in excluding the evidence on hearsay grounds.  Nevertheless, we have reviewed the interrogatories and find that this evidence does not preponderate against the trial court's determination that, under the circumstances, Mr. Perry did not need a conservator.  Dr. Foster states in the interrogatories that Mr. Perry would only need a conservator "when making major financial decisions."

executed on February 5, 2014, stated the property sold for $15,000, Mr. Perry insisted the deed was incorrect. Additionally, Mr. Perry testified that, as a part of their agreement, Mr. Hollandsworth would renovate Mr. Perry's childhood home and allow Mr. Perry to live in the home for the rest of Mr. Perry's life. A subsequent deed was entered into evidence, executed on October 18, 2016, showing that Mr. Hollandsworth conveyed to Mr. Perry a life estate in the property. Mr. Perry believed that at the time he sold the property to Mr. Hollandsworth, the property was worth $80,000, but tax records entered into evidence showed that, at that time, the property was valued at $95,900.

Mr. Hollandsworth's testimony supported Mr. Perry's testimony. Like Mr. Perry, Mr. Hollandsworth testified that, though the deed stated he paid $15,000 for the property, he actually paid $16,000, and he gave Mr. Perry a truck worth $10,000 and a tractor worth at minimum $15,000. Mr. Hollandsworth further testified that it would cost at least $50,000 to renovate the home as promised. According to Mr. Hollandsworth, Mr. Perry did not retain a life estate via the original deed because Mr. Hollandsworth and Mr. Perry did not know that it was possible to do so. Mr. Hollandsworth stated that, prior to trial and after legal consultation, he conveyed a life estate to Mr. Perry in the 29 acres in accordance with their original agreement.

Mr. Bush did not controvert Mr. Perry's and Mr. Hollandsworth's testimony regarding the true nature of the agreement for the sale of the property. He primarily testified to the importance of holding onto the property, explaining:

> [F]irst of all, [the life estate] came two years after the sale of the property. And I think that [Mr. Perry] could sell the timber on it. I think he could rent a portion of the property that's being rented and he could live on a smaller portion of it. He might be able to hold onto the property. And you know . . . property value goes up every day.

Like Mr. Bush, none of the other witnesses at trial controverted Mr. Perry's and Mr. Hollandsworth's testimony regarding the sale of the property.

In light of all the evidence before the trial court, we agree that Mr. Bush failed to present clear and convincing evidence that Mr. Perry needed a conservator. We have determined that the evidence preponderates in favor of the trial court's determination that Mr. Perry had the "decision-making capacity to make reasoned decisions regarding his limited property, assets and lifestyle." While Mr. Bush asserts that Mr. Perry's decision to sell the property was unwise, "[a] person does not lack decision-making capacity merely because he or she does things that others either do not understand or find disagreeable." *In re Conservatorship of Groves*, 109 S.W.3d at 335. Mr. Perry's decision was not "based on deranged or delusional reasoning or irrational beliefs." *Id.* To the contrary, Mr. Perry showed that, despite his disability, he was capable of managing his

remaining assets, consisting of a life estate, a tractor, and a truck, without the court's assistance.

## IN CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.


                                  _____

                                  RICHARD H. DINKINS, JUDGE