IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 2, 2022

**IN RE GRACELYN H. ET AL.**

**Appeal from the Juvenile Court for Crockett County**
**No. 2019-DN-13     Paul B. Conley, III, Judge**

_____

**No. W2021-00141-COA-R3-JV**

_____

A grandfather commenced this action for grandparent visitation after his daughter and two granddaughters moved out of his house. While the action was pending, the trial court entered an agreed order that granted temporary visitation to the grandfather. When the mother refused to comply with the agreed order, the grandfather filed a motion for civil contempt. Following several delays, the petition for grandparent visitation and the motion for contempt came on for hearing on the same day. After the final hearing, the trial court denied both the petition for grandparent visitation and the motion for civil contempt. The court found that the grandfather failed to prove that losing his relationship with the children would create a risk of substantial harm to the children. The court also found that the mother's failure to comply with the agreed order was not willful because she had been coerced into the agreement by her former attorney. This appeal followed. We affirm the dismissal of the petition for grandparent visitation. With regard to the motion for civil contempt, we find the issue is moot because the grandfather no longer had any right to visitation after this petition was dismissed. Thus, the contempt issue is pretermitted on the basis of mootness.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which KRISTI M. DAVIS and CARMA DENNIS MCGEE, JJ., joined.

Will T. Hughes, Alamo, Tennessee, for the appellant, Melvin W.[1]

Tucker H., Obion, Tennessee, appellee, pro se.

_____

[1] This court has a policy of protecting the identity of children by initializing the last name of the parties.

Andrea D. Sipes, Jackson, Tennessee, for the appellees, Austin C. and Candace H.

Kelly F. Tomlinson, Brownsville, Tennessee, guardian ad litem for the minor children, Gracelyn H. and Cora H.

# OPINION

## FACTS AND PROCEDURAL BACKGROUND

Gracelyn and Cora H. ("the Children") were born in June 2013 and April 2017, respectively, to Candace H. ("Mother"). The Children would often visit the home of their maternal grandfather, Melvin W. ("Grandfather"), and they moved into his house with Mother in August 2019. The stay was short-lived, however, as Mother and Grandfather often disagreed about how the Children should be cared for.

Mother and the Children last moved out of Grandfather's house in October 2019, after which Mother cut off all contact with Grandfather.

One month later, in November 2019, Grandfather filed a Petition for Emergency and Temporary Custody of Dependent and Neglected Children against Mother and the Children's fathers, Austin C. and Tucker H.[2] Grandfather subsequently amended his petition to seek grandparent visitation under Tennessee's Grandparent Visitation Statute, Tennessee Code Annotated § 36-6-306, and dismissed his dependent and neglect petition.

While the action was pending, the trial court approved an agreed order for temporary visitation under which Grandfather would visit with the older grandchild, Gracelyn, every Saturday from 10:00 a.m. to 6:00 p.m. Mother, however, refused to comply with the order, and Grandfather filed a motion for civil contempt. Because of several procedural delays, the Motion for Civil Contempt was not heard until the day of the final hearing for Grandfather's Petition for Grandparent Visitation, December 18, 2020.

At the outset of the hearing, Mother stipulated that she did not comply with the Agreed Order. The parties also stipulated that Grandfather had a "significant existing relationship" with the Children before October 2019, and that Mother opposed visitation. Thus, the only issues pertaining to visitation were whether the cessation of the relationship between Grandfather and the Children was likely to cause "substantial harm" to the Children as required by Tennessee Code Annotated § 36-6-306(b)(1) and, if so, whether visitation was in the Children's best interests.

---

[2] Austin C. is the biological father of Cora H., and Tucker H. is the biological father of Gracelyn H. Both fathers were served with process, however, Tucker H. did not make an appearance or participate in the action.

The trial court heard testimony from several witnesses, including Mother; Grandfather; Grandfather's girlfriend, Joy C.; Grandfather's brother, Kermit W.; and Cora's father, Austin C. Grandfather testified that he used to see the Children "all the time" and that they were "very close" to him. Grandfather described his house as full of toys and games that the Children loved to play with, and he said that the Children would always cry whenever they had to leave. Grandfather also testified that Gracelyn asked for him after having a medical procedure and wanted to go to his house from the hospital. Grandfather believed that the girls loved him and that severing their relationship with him would harm them emotionally.

Grandfather's testimony was generally corroborated by his girlfriend, Joy C., and his brother, Kermit W. Both Joy C. and Kermit W. testified that Grandfather had a close relationship with the Children before Mother cut off contact. Joy C.—who also worked at Gracelyn's school—stated that Gracelyn acted differently around her after moving out of Grandfather's house. Joy C. stated that, once, Gracelyn was unusually reserved and acted as if she were not supposed to see Joy C. Joy C. also stated that Gracelyn was not eating much food from the cafeteria for lunch, but admitted that Gracelyn's behavior was only "a little" different than before, and she said that Gracelyn had been "smiling and laughing and talking" at school.

Cora's father, Austin C., characterized Grandfather's house as essentially a "large playhouse." He believed that a lack of structure at Grandfather's house created behavior problems in the Children. Austin stated the Children were behaving better at home and school now that they did not see Grandfather. He also testified that Gracelyn had not asked for or even mentioned Grandfather since she stopped seeing him, and that Cora was too young to ask about Grandfather.

Mother testified that the Children were doing well and had not asked for Grandfather since they left his house in October 2019. Mother also stated that the Children were doing better now that they were not exposed to arguments between Mother and Grandfather. She explained that Gracelyn used to have nightmares but now sleeps through the night. Mother said that one reason she did not take Gracelyn to the agreed-upon visitation was that Gracelyn did not want to see Grandfather. Mother also asserted that she was forced to agree to the temporary visitation order by her former attorney, who withdrew as counsel soon after.

In its final order entered on January 8, 2021, the court found that Grandfather offered no proof that the Children suffered or were suffering "substantial harm" by being denied contact with him. The court noted that the only evidence about the Children's welfare established that they "were doing well at home and in school, and had suffered no ill effects." Thus, the court found it was unnecessary to address whether visitation would be in the Children's best interests. As for the Motion for Contempt, the court credited Mother's testimony and found that her failure to comply with the Agreed Order was not

willful. Thus, the trial court denied Grandfather's Motion for Contempt and dismissed his Petition for Grandparent Visitation.

This appeal followed.

## ISSUES

Plaintiff raises three issues on appeal:

I. Whether the trial court erred by finding that the facts would not lead a reasonable person to believe that the loss or severe reduction of the relationship between Grandfather and the Children is likely to occasion severe emotional harm to the Children or present the danger of other direct and substantial harm to them?

II. Whether the trial court erred by finding that Mother was not in civil contempt of an agreed order of visitation that was entered by the trial court prior to the hearing?

III. Whether the trial court erred by applying the wrong burden of proof and standard to modify an agreed order of visitation?

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, "appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014); *see* Tenn. R. App. P. 13(d). In doing so, we give great weight to a trial court's determinations of credibility. *See Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted).

Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

ANALYSIS

## I. DANGER OF SUBSTANTIAL HARM

Grandfather contends that the trial court erred in finding that the severance of his relationship with the Children did not create a danger of substantial harm to the Children.

To obtain court-ordered visitation with a grandchild, a grandparent must prove—as a threshold matter—"that the child will be in danger of substantial harm if visitation is not ordered." *McGarity v. Jerrolds*, 429 S.W.3d 562, 570 (Tenn. Ct. App. 2013) (citing *Hawk v. Hawk*, 855 S.W.2d 573, 581 (Tenn. 1993); Tenn. Code Ann. § 36-6-306(b)(1)). This is because parents have a fundamental right to raise their children as they see fit. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (recognizing that the U.S. Constitution gives parents the right to make decisions on the care, custody, and control of a child). "Absent substantial harm to the child, a trial court lacks a sufficiently compelling justification for interfering with the parents' privacy rights by ordering grandparent visitation." *Coleman v. Olson*, 551 S.W.3d 686, 698 (Tenn. 2018).

Under Tennessee's Grandparent Visitation Statute, Tennessee Code Annotated § 36-6-306, a grandparent may prove a danger of substantial harm by showing that the child had a significant existing relationship with the grandparent and that the loss or reduction of the relationship is likely to cause severe emotional or other substantial harm:

> [A] finding of substantial harm may be based upon cessation or severe reduction of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:
>
> (A)    The child had such a significant existing relationship with the grandparent that loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child; [or]
>
> .   .   .
>
> (C)    The child had a significant existing relationship with the grandparent and loss or severe reduction of the relationship presents the danger of other direct and substantial harm to the child.

Tenn. Code Ann. § 36-6-306(b)(1).[3] No expert proof is necessary; instead, courts must "consider whether the facts of the particular case would lead a reasonable person to believe

---

[3] Grandparents may also establish significant harm by showing that "[t]he grandparent functioned as a primary caregiver such that cessation or severe reduction of the relationship could interrupt provision

that there is a significant existing relationship between the grandparent and grandchild or that the loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child." *Id.* § 306(b)(3).

Mother stipulated that Grandfather had "a significant existing relationship" with the Children, and Grandfather relies on three pieces of evidence to establish that losing the relationship is likely to cause the Children substantial harm. First, Grandfather points to evidence that he and the Children had a loving relationship before his contact was cut off. Second, Grandfather cites evidence that—since his visitation was cut off—the Children "do not ask for [him], do not want to see him, and . . . don't miss him." Third, Grandfather references Joy C.'s testimony that Gracelyn "began to act suspicious around [Joy C.]" and "was not eating a[t] school" after moving out of Grandfather's house.

Grandfather contends these facts are analogous to those in *Angel v. Nixon*, No. M2010-00554-COA-R3-CV, 2010 WL 4483915 (Tenn. Ct. App. Nov. 8, 2010). In *Angel*, we affirmed the trial court's finding that a danger of substantial harm existed based on evidence that the child's attitude toward the grandmother soured after the child stopped seeing her. *Id.* at *4–5. Before being separated, the child had a "warm and loving relationship with [the grandmother]." *Id.* at *4. But after being separated, the child called the grandmother "mean" and did not "warm up to her" during visits. *Id.* The trial court determined that the separation created a danger of substantial harm to the child because the separation could create "feelings of abandonment and depriv[e] him of his right to learn about his heritage and the people who love and cared for him when he was young." *Id.* The court also found that the mother's resentment and anger toward the grandmother would force the child to be deceptive if he pursued a relationship with the grandmother when he was older. *Id.*

This case, however, differs from *Angel* because the grandmother in *Angel* was the child's paternal grandmother, and the child's father had recently died. *Id.* at *1. Before the father's death, the child attended weekly gatherings with his father's family. *Id.* But after the father died, the mother made "numerous attempts to frustrate any contact between [the] child and the family." *Id.* at *2. Thus, the trial court's ruling reflected a particular concern for the child's connection to his father's family—from whom the child would otherwise have been estranged. *See id.* at *4.[4] The facts in this case do not invoke the same concerns.

---

of the daily needs of the child and thus occasion physical or emotional harm." Tenn. Code Ann. § 36-6-306(b)(1)(B). In this case, however, Grandfather does not contend that he functioned as a primary caregiver.

[4] Shortly after the trial court's decision in *Angel*, the Tennessee General Assembly amended the Grandparent Visitation Statute to provide a rebuttable presumption of substantial harm when "the child's parent is deceased, and the grandparent seeking visitation is the parent of that deceased parent." *See* Act of May 6, 2010, ch. 957, § 1, 2010 Tenn. Pub. Acts 482, 482 (codified at Tenn. Code Ann. § 36-6-306(b)(4)).

Here, Mother cut off the Children's contact with her own father. As a consequence, Grandfather's reliance on *Angel* is misplaced.

As the petitioner in a grandparent visitation proceeding, Grandfather bears a "high burden" to prove "severe emotional harm." *See McGarity*, 429 S.W.3d at 578. Proving a likelihood of "severe emotional harm" requires "evidence to support a finding that the child is likely to suffer . . . harm that could reasonably be categorized as severe, grave, distressing, or extreme." *Id.* at 579 (citing *Severe*, Black's Law Dictionary (5th ed. 1979)). "The mere fact that a significant existing relationship exists will not suffice for a showing of substantial harm." *Huffman v. Huffman*, No. E2012-02164-COA-R3-CV, 2013 WL 4715042, at *7 (Tenn. Ct. App. Aug. 30, 2013).

The phrases "severe emotional harm" and "substantial harm" are "not amenable to precise definition." *McGarity*, 429 S.W.3d at 578 (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)). That said, using the modifier "substantial" suggests two things:

> First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray*, 83 S.W.3d at 732 (footnote omitted).

In its final order, entered on January 8, 2021, the trial court acknowledged that the parties stipulated there was a significant existing relationship at the time Mother stopped the visitations between the Children and Grandfather, citing Tennessee Code Annotated §36-6-106(a)(6). Based on the stipulation, the court found that Grandfather had standing under the statute to bring this Petition for Grandparent Visitation. The court then turned its focus on whether Grandfather had carried his burden of showing that cessation of that relationship is likely to result in "substantial harm" to the Children. In making that determination, based on three factors set out in Tennessee Code Annotated § 36-6-306(b)(1) and as set out in Tennessee Code Annotated § 36-6-306(b)(2), the trial court made extensive findings of fact including the following.

The court found that Mother had lived with Grandfather on at least three separate occasions between December of 2018 and when Mother ceased any relationship with Grandfather, which was when she and the Children last left his home on October 15, 2019. Significantly, the court found that Grandfather "offered no proof that the children at issue here had suffered or were suffering 'substantial harm' by being denied visitation with [Grandfather]." It also noted Joy C.'s testimony that when she saw Gracelyn at school in 2020, Gracelyn appeared to be doing well. The court also credited Mother's testimony that Gracelyn had not asked to visit Grandfather and that Gracelyn had stopped having

"nightmares" after they left Grandfather's home. The trial court also found that at the time of the final hearing, neither grandchild had visited Grandfather's home in 14 months.

After making these findings of fact, the trial court then focused on the "substantial harm" component, which the trial court recognized as "the threshold question in grandparent visitation cases," citing *McGarity v. Jerrolds*, 429 S.W.3d 562, 570 (Tenn. Ct. App. 2013). The trial court also acknowledged that it must avoid the assumption that a "grandparent-grandchild relationship always benefits the grandchild." *See id.* at 571. Based on these legal principles and the trial court's findings of fact, the court concluded that Grandfather had not carried his burden of proof of "substantial harm" to the grandchildren resulting from Mother's cessation of visits with Grandfather. For these reasons, the trial court denied the Petition for Grandparent Visitation.

After a thorough review of the record, we find the evidence does not preponderate against the trial court's findings or the conclusion that Grandfather failed to prove that severance of his relationship with the Children would create a danger of substantial harm to them. Accordingly, we affirm the decision to deny the Petition for Grandparent Visitation.

## II. CIVIL CONTEMPT

Grandfather contends that the trial court erred in finding that Mother did not willfully violate the Agreed Order that gave him temporary visitation with Gracelyn. We find this issue is moot.

"An issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue, or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment[.]" *City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013). Grandfather's Motion for Contempt asked the trial court for more visitation to compensate for the visitation he lost when Mother refused to obey the Agreed Order. But the Agreed Order was only a temporary agreement for visitation pending the trial court's decision at the final hearing. This is significant because a civil contempt action is brought to enforce private rights. *See State ex rel. Flowers*, 209 S.W.3d at 613 (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)). After the final hearing, the trial court determined that Grandfather had no right to visitation. Thus, Grandfather had no private right to enforce.

Because Grandfather no longer had any right to visitation after his petition was dismissed, this issue is pretermitted on the basis of mootness.

## III. MODIFICATION OF AGREED ORDER

Besides arguing that the trial court erred in applying the Grandparent Visitation Statute, Plaintiff contends that the trial court erred by not applying the standard for

modification of a grandparent visitation order from *Lovlace v. Copley*, 418 S.W.3d 1 (Tenn. 2013). We respectfully disagree that the *Lovlace* standard applies.

The dispute in *Lovlace* involved "competing petitions for modification and termination of previously court-ordered grandparent visitation." *Id.* at 22. Because the Grandparent Visitation Statute does not address modification or termination, the Tennessee Supreme Court determined, as a matter of first impression, "the appropriate burdens of proof and standards to be applied." *Id.* The Court adopted a two-part test:

> First, a party petitioning for modification or termination must demonstrate by a preponderance of the evidence a material change in circumstances. If this showing is made, the party must next prove, by a preponderance of the evidence, that the requested modification or termination of visitation is in the best interests of the child.

*Id.* at 23.

Unlike *Lovlace*, this case involves an initial petition for grandparent visitation—not a petition to modify or terminate previously court-ordered visitation. The only court-ordered visitation was the temporary visitation in the Agreed Order, which expired by its own terms at the final hearing. Thus, we find the *Lovlace* standard is inapplicable.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Melvin W.

_____
FRANK G. CLEMENT JR., P.J., M.S.