IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2024 Session

## JENNIFER ERDMAN v. MARK ERDMAN

**Appeal from the Chancery Court for Williamson County**
**No. 15CV-44359     Deanna B. Johnson, Judge**

————————————————————

### No. M2022-01728-COA-R3-CV

————————————————————

This appeal concerns the trial court's denial of alimony and attorney's fees to wife following a long-term marriage. Upon our review of the record transmitted on appeal, and for the reasons stated herein, we vacate the trial court's denial of alimony and attorney's fees and remand those matters for reconsideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER J., joined.

Sarah Richter Perky, Franklin, Tennessee, for the appellant, Jennifer Erdman.

Elizabeth A. Russell and Sean R. Aiello, Franklin, Tennessee, for the appellee, Mark Erdman.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This is the second appeal of this matter between Jennifer Erdman ("Wife") and Mark Erdman ("Husband"). In the prior appeal, *Erdman v. Erdman*, No. M2018-01668-COA-R3-CV, 2019 WL 6716305 (Tenn. Ct. App. Dec. 10, 2019), this Court addressed a number of issues that followed from the trial court's decision to grant Husband a divorce. *See id.* at *1-2. Because the general background facts of this matter are adequately set forth in our prior opinion, we frame our present review by reproducing our prior overview of the case herein:

[Wife and Husband] married in May of 2000. Wife entered the marriage with

one child from a prior marriage, whereas Husband had never previously been married and had no children. Over time, six children were ultimately born of the marriage.

Although Wife was employed by her parents' businesses at the time of the marriage, she stopped working in 2001 when the parties' oldest child was born. For the majority of the marriage, Wife served as a homemaker, although she occasionally supplemented the family's income by assisting with local soccer tournaments, among other endeavors. At the time of trial in this matter, Wife had resumed work in her family's businesses, earning a little over $50,000.00 per year as a result of this employment. For his part, Husband served as the primary breadwinner during the marriage, working as a drug sales representative for Pfizer. In 2017, he earned approximately $190,000.00.

The litigation in this matter commenced in July 2015 when Wife filed a complaint for divorce. Wife averred that the parties had experienced irreconcilable differences in their marriage, and pleading in the alternative, she accused Husband of inappropriate marital conduct. Husband answered the complaint in August 2015 and contemporaneously filed his own petition for divorce. Whereas Husband agreed that the parties were experiencing irreconcilable differences in the marriage, he denied that he was guilty of inappropriate marital conduct. According to Husband, Wife was the one guilty of inappropriate marital conduct. Wife promptly denied this allegation when she filed her answer to Husband's counter-petition in September 2015, but, upon Husband's filing of an amended counter-petition for divorce, she later admitted to having committed adultery. Wife argued, however, that the adultery was not the cause of the marriage's demise and specifically asserted that it had taken place only after she and the children had moved out of the marital residence.

The trial of this matter occurred over multiple dates between June 2017 and January 2018. The proof was quite extensive and covered several topics, including the parties' financial details, the children's schooling arrangements, and the children's participation in extracurricular activities. On August 29, 2018, the trial court entered its "Memorandum and Order," granting Husband a divorce on the grounds of Wife's inappropriate marital conduct and adultery. The "Memorandum and Order" was very detailed and made a number of rulings incident to the divorce. In addition to dividing the parties' assets, the trial court's order denied Wife's request for alimony and attorney's fees and granted Husband sole decision-making authority regarding the children's extracurricular activities. In a subsequently-entered permanent parenting plan, Husband was charged with responsibility for

payment of the children's tuition, uniforms, and books associated with private schooling, whereas Wife was charged with responsibility for tutoring and required school fees.

*Id.* at *1.

In the course of adjudicating the prior appeal, we determined that the trial court's division of the marital estate should be vacated due to issues surrounding a 401(k) account and an IRA. *Id.* at *3-4. Because of this determination, we further held that the trial court's rulings on alimony and attorney's fees should also be vacated, explaining that the dissolution of a marriage requires courts to engage in an "'orderly disentanglement' of the parties' affairs." *Id.* at *4. (quoting *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998)). Of note, although we vacated the trial court's rulings with regard to the marital estate division, alimony, and attorney's fees, we stated that "additional comments and instruction are nonetheless warranted as to these matters." *Id.* In specifically setting out our concerns about the order then on appeal, we began by expressing our opinion that "some of the court's specific considerations [concerning the property division] were misplaced," *id.* at *5, stating in pertinent part as follows on the subject:

> [W]e are concerned with the trial court's direct highlighting of evidence that Wife's family businesses earn over $18.7 million annually. The trial court referenced this fact on two occasions incident to its division of the marital estate, nominally in regard to Tennessee Code Annotated section 36-4-121(c)(2) and Tennessee Code Annotated section 36-4-121(c)(4). The trial court also specifically referenced the fact that Wife was being groomed to become CFO of these businesses, and according to the court, would "very soon" have the same earning capacity as Husband. Initially, we note that the progression of Wife in the family businesses was somewhat speculative, with her father testifying that "[t]ime will tell" and that some of these changes were perhaps five or six years away. This aside, the reference to the annual earnings of the family businesses is troubling because there is no evidence that Wife had any equity interest and would therefore share in any profit proceeds. The proof at trial revealed that the only two stockholders were Wife's mother and father. Thus, we are of the opinion that it was error for the trial court to place emphasis on the annual earnings of these businesses in relation to the consideration of Wife's financial needs.

*Id.*

Continuing on, we then stated as follows in relation to the trial court's analysis pertaining to the issues of alimony and attorney's fees:

> Similar concerns attach to the trial court's analysis on Wife's claim

for alimony, which also included references to Wife's future at her family's businesses and the annual earnings of these businesses. As already noted, Wife's future at the businesses was speculative, and we observe that in a prior decision, we recently concluded that a trial court erred in considering "speculative income" incident to a ruling on alimony. *See Diffie v. Diffie*, No. M2018-00267-COA-R3-CV, 2019 WL 1785683, at \*13 (Tenn. Ct. App. Apr. 23, 2019). As for the trial court's reference to the annual earnings of Wife's family businesses, we once again note that Wife has no ownership interest in these companies. Therefore, we find it to be error to place emphasis on these annual earnings in relation to Wife's financial needs.

Regarding Wife's claim for trial attorney's fees, we observe that the trial court held, among other things, that Husband would be required to deplete his resources in order to pay Wife's fees. We agree with Wife that it is unclear how this would be the case under the current property division, but obviously, the issue of attorney's fees must be reconsidered on remand in light of the court's ruling on the antecedent financial issues.

We note that the trial court also denied attorney's fees to Wife due to what it determined was excessive litigation. We have no qualms with the trial court's refusal to sanction an award for fees that it determined were unnecessarily incurred. Nonetheless, for fees that did not contribute to excessive litigation, the trial court should consider the relevant factors in Tennessee Code Annotated section 36-5-121(i). *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (noting that an award of attorney's fees in a divorce case constitutes alimony in solido and that, as with any alimony award, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i)).

*Id.* at \*6.

Following our remand of the case, in its January 14, 2022, "Memorandum and Order," the trial court divided the marital estate nearly equally in percentage terms, specifically awarding Wife $374,710.51 from the marital estate as opposed to Husband's award of $363,053.86 in marital estate value. Husband, the court noted, also had an additional $424,195.22 in value as his separate property, which was in stark contrast to Wife, who had no separate property. Of note to another matter discussed later in this Opinion, the trial court stated as part of its property division discussion that it had awarded stock options to Wife that had a value of $5,704.00.

After addressing the division of the marital estate, the trial court's January 14, 2022, "Memorandum and Order" went on to address the subject of alimony. Inasmuch as the trial court's decision on this issue is the central point of contention in this appeal, a lengthy

excerpt from the trial court's analysis, namely its consideration of the relevant factors codified at Tennessee Code Annotated section 36-5-121(i),[1] is reproduced below. Although, as is evident, the trial court's discussion pertaining to alimony did not, as before, reference Wife's speculative future at her family's businesses or the annual earnings of those businesses, the court nonetheless denied her any alimony, stating, among other things, that Wife did not have a need for it. The trial court's specific findings relative to the alimony factors at Tennessee Code Annotated section 36-5-121 were as follows:

1. The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources

    Both parties have a relatively high earning capacity. Husband earns a nice salary at Pfizer and Wife earns a good salary at McInereny & Associates and with the soccer tournaments.

2. The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level

    Both parties are well educated and earn good money.

3. The duration of the marriage

    The duration of the marriage was seventeen years.

4. The age and mental condition of each party

    Husband was fifty-two years old and Wife was forty-three years old at the time of trial. Both parties were in good mental condition.

5. The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease

    Both parties were in good physical condition.

---

[1] As discussed later herein, this section of the Tennessee Code contains a list of factors that shall be considered by trial courts when determining whether an order for payment of support and maintenance is appropriate and in determining the nature, amount, length of term, and manner of payment of any alimony awarded. *See* Tenn. Code Ann. § 36-5-121(i).

6. The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage

    Both parties were employed outside the home.

7. The separate assets of each party, both real and personal, tangible and intangible

    Husband has significant separate assets.

8. The provisions made with regard to the marital property, as defined in § 36-4-121

    The Court has divided the marital assets in a prior section and will not reiterate that division here.  Both parties will receive substantial amounts of money from the marital assets.

9. The standard of living of the parties established during the marriage

    The parties were accustomed to a comfortable living.

10. The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party

    Husband made substantial tangible contributions through his employment income. Wife made tangible contributions to the family through her income, but not as much as Husband.  Wife made substantial intangible contributions to the family when the children were young as a stay-at-home mother and homemaker.

11. The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so

    Wife was at fault for the demise of the marriage and the breakup of this family due to infidelity and inappropriate marital conduct.  Wife had at least two affairs and acted inappropriately with her conduct in going out several nights per week and drinking alcohol, ostensibly to work . . . .

12. Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties

Husband will have a higher income tax obligation than Wife because she currently earns less money. The Court finds that Wife is not entitled to spousal support and, therefore, the Court declines to grant it. At the time of trial, Wife made about $60,000 per year and did not show a need for spousal support.

In additionally denying Wife attorney's fees, the trial court noted that it had declined to award her alimony and stated that she had adequate property and income. Further, the trial court noted that a substantial portion of Wife's "excessively high" attorney's fees was attributable to her conduct and litigation tactics.

Wife filed a motion to alter or amend on February 9, 2022, raising various issues concerning property matters between the parties, and the trial court thereafter entered an order granting Wife relief relative to the motion. Among other things, the order signaled that the court was reopening proof on a property matter, and it expressly noted that it "shall not serve as a final order for the purposes of appeal due to the pending issues set forth herein."

In an "Agreed Order" entered on November 15, 2022, certain property issues were addressed, including pursuant to the following language dealing with the subject of stock options:

> [T]he parties acknowledge that [Wife] was awarded Pfizer stock options with a value of $5,704.00 per the Final Decree, however, in lieu of [Wife] receiving said options, [Husband] shall transfer to [Wife] 244 shares of Pfizer Common Stock. Such stock shall be immediately transferred by [Husband] to [Wife] on the signing of this Agreed Order by the Courts which shall constitute a non-taxable division of property pursuant to a divorce.

The order then concluded by reciting that it "resolves all remaining issues on remand and shall constitute a Final Order . . . for the remand of this matter from the Tennessee Court of Appeals . . . ." This appeal later ensued.

## DISCUSSION

On appeal, Wife asserts that the trial court erred in failing to award her alimony of any amount, type, or duration. Further, she contends that the trial court erred in failing to award her attorney's fees at trial, while also requesting that she be awarded attorney's fees for this appeal. For his part, Husband contends that the trial court's order should be affirmed, and he submits that he is entitled to an award of reasonable and necessary attorney's fees and discretionary costs on appeal.

*Alleged Waiver of Wife's Appellate Rights*

At the outset, we address a preliminary issue that Husband has lodged concerning Wife's attempt to appeal the trial court's denial of alimony. According to Husband, Wife's appeal of the alimony issue is barred due to the entry of the November 15, 2022, "Agreed Order" that was mentioned above. His argument appears to be that, by agreeing under the "Agreed Order" to receive Pfizer common stock in lieu of stock options, Wife waived any rights to further appeal. Husband states that the "Agreed Order" "was obviously intended to fully and finally resolve any outstanding issues between the parties" and that "[f]or [Wife] to now take the continuing position that she is also entitled to an award of alimony and attorney fees is not only inconsistent, but disingenuous."

We need not spill much ink on this issue. Respectfully, we fail to find any merit in Husband's argument concerning Wife's alleged waiver. As we read the "Agreed Order," all the order purported to do was reach a resolution regarding discrete property issues. There is simply no indication from its terms that Wife agreed to forgo any pursuit of alimony because of the resolution reached between the parties. Husband's attempted representation to the contrary is simply without support.[2] We therefore turn our attention below to the merits of the trial court's action regarding Wife's pursuit of an alimony award.

*The Trial Court's Denial of Any Alimony to Wife*

A trial court's decision regarding alimony is reviewed under an abuse of discretion standard. *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011). Although the abuse of discretion standard "envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal," *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010), the standard "does not . . . immunize a lower court's decision from any meaningful appellate scrutiny." *Id.* As the Tennessee Supreme Court has explained:

> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn.2008); *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis,* 235 S.W.3d 136, 141 (Tenn.2007). A court abuses its

---

[2] As part of his argument, Husband notes the language in the "Agreed Order" that states that it "resolves all remaining issues on remand." Apparently as a result of such language, Husband then immediately remarks thereafter that the "Agreed Order" "serves as a waiver of both parties' rights to further appeal as there are no longer any issues remaining." Suffice it to say, the trial court's statement indicating that all issues have been resolved does not itself in any way signal that there has been a waiver of appellate rights. It simply signals that, in the trial court's view, there is nothing further for it to adjudicate.

discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein,* 293 S.W.3d 519, 526 (Tenn.2009); *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.,* 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville,* 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis,* 285 S.W.3d 856, 872–73 (Tenn.Ct.App.2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.,* No. 87–136–II, 1988 WL 72409, at *3 (Tenn.Ct.App. July 13, 1988) (No Tenn. R.App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R.App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.,* 146 S.W.3d 600, 604 (Tenn.Ct.App.2004); *Boyd v. Comdata Network, Inc.,* 88 S.W.3d at 212.

*Id.* at 524–25.

As discussed in an earlier footnote in this Opinion, Tennessee Code Annotated section 36-5-121(i) contains a list of factors that shall be considered by trial courts when determining whether an order for payment of support and maintenance is appropriate and in determining the nature, amount, length of term, and manner of payment of any alimony awarded. These specific factors are as follows:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

Case law is clear that "[t]he two most important factors are the need of the disadvantaged spouse and the obligor spouse's ability to pay." *Watson v. Watson*, 309 S.W.3d 483, 497–98 (Tenn. Ct. App. 2009). The threshold consideration is the disadvantaged spouse's need. *Ellis v. Ellis*, 621 S.W.3d 700, 706 (Tenn. Ct. App. 2019).

In this case, the trial court did consider the factors from section 36-5-121(i) on remand, and as we noted earlier, its discussion pertaining to alimony did not—in contrast to the order that was the subject of the first appeal—reference the speculative future of Wife at her family's businesses or the annual earnings of those businesses. Nonetheless, the trial court still denied Wife any alimony, stating again, among other things, that Wife did not have a need for it.

On appeal, Wife has taken great umbrage at the trial court's decision to deny any alimony to her, placing much emphasis on the fact that she was "a homemaker and primary caregiver to the parties' 6 (six) children for seventeen (17) years and severely financially disadvantaged as to [Husband]." She argues that "the proof at trial was uncontroverted that the parties mutually agreed that [Wife] should resign her position at McInerney & Associates, Inc. in April 2001 so that she could serve exclusively as a homemaker and primary caregiver," and further, although the trial court specifically found that she made "good money" in its order, Wife submits that "it was undisputed that [Husband] earned

- 10 -

significantly more than [Wife]; in fact, grossing almost four times her annual income."

As to the threshold consideration regarding a request for alimony, i.e., the disadvantaged spouse's need, Wife argues that the trial court's finding that she "did not show a need for spousal support" was a "completely unsupported finding." According to her, the financial need of approximately $6000.00 per month that was reflected on her income and expense statement was "uncontroverted" by Husband at trial.

Having carefully reviewed the record in consideration of Wife's grievance, although we reject Wife's assertion that the totality of her claimed need was "uncontroverted," we do conclude that the evidence preponderates against the trial court's finding that she has no need for alimony. The evidence, with greater convincing effect, supports a finding that Wife indeed has some need. *See State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) ("For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.").

Without question, based on this record, Wife's reported monthly deficit of approximately $6,000.00 is overstated for the purpose of assessing her need for alimony.[3] Although the point does not appear to be discussed by the parties on appeal, we initially observe that Wife's income and expense statement does not take into account or contemplate her receipt of any child support. Case law indicates, however, that receipt of child support is relevant to a consideration of a disadvantaged spouse's needs. *See, e.g.*, *Scherzer v. Scherzer*, No. M2017-00635-COA-R3-CV, 2018 WL 2371749, at *16 (Tenn. Ct. App. May 24, 2018) ("[C]hild support income should be considered in conjunction with all of Wife's financial assets when determining Wife's need for alimony."). However, here, Husband's child support obligation of $1,620.00 per month does not in any way eliminate Wife's claimed deficit, nor do, as discussed below, various challenges to Wife's expenses that are specifically mentioned by Husband on appeal.

Even though his own general rent/mortgage expense is reported at over $3,000.00 a month, Husband takes issue with Wife's listed rent/mortgage expense of $2,500.00 and her reported garbage expense of $50.00. Husband notes that Wife testified her rent was only $1,795.00 per month[4] and that she testified that she did not currently have the $50.00 garbage expense. Further, according to Husband, Wife conceded that she did not actually pay $140.00 that is listed as a car insurance expense, and he takes issue with a claimed

---

[3] Interestingly, we observe that the alimony awards proposed by Wife in her brief are in amounts lower than the reported deficit.

[4] Wife's testimony indicated that the $2,500.00 figure was an estimate of what her expense would be if she purchased a home.

college tuition expense for a child of Wife's from a previous marriage. Even if these expenses are all discounted or rejected in the specific manner apparently suggested by Husband in relation to Wife's claim for alimony, Wife still has a reported deficit.

The same holds true even when additionally considering Husband's challenge to Wife's reported food expenses. In relevant part, Husband argues as follows in his brief regarding Wife's food expenses:

> [Wife testified] that her monthly food expenses are over $2,000.00 per month but provides no information regarding how she arrived at this figure. In fact, finally, [Wife] admits that her income and expense statement, while sworn, is not representative of what she is actually earning and paying. This income and expense statement is merely a projection based on what she believes her expenses will be when she purchases a home . . . .

(internal record citation omitted). Husband's representation is spurious to the extent that he is suggesting that Wife was representing that the entirety of her income and expense statement was purely a post-divorce projection[5] and therefore, in his view apparently,[6] not sufficient for an assessment of need. In fact, when specifically asked about her reported food expenses, Wife responded as follows: "Yes, Sir, *that's what I'm currently paying*." (emphasis added)

To the extent Husband is asserting a challenge to the reasonableness of Wife's food expenses through his argument, it should go without saying that the food expenses for an adult and six children will not be insignificant, and Husband's expense statement actually allocates a total monthly amount of $1,400.00 for food for him and the children. Even assuming *that* amount is the amount that should also be deemed reasonable for Wife to claim, Wife still remains at a meaningful deficit.

---

[5] The referenced comment about projected expenses occurred during a line of questioning pertaining to household expenses, specifically regarding Wife's reported $50.00 garbage expense. When Wife was asked whether she knew if she paid $50.00 a month for garbage, she replied as follows: "Oh, currently, no, Sir. And, again, we testified if I purchased a home, these are what we projected."

[6] As an aside, we observe that Husband's testimony concerning his own listed monthly expenses does not appear to be wholly untethered from estimating or projecting what a reasonable expense amount might be for a particular category post-divorce. By way of example, regarding one expense, Husband testified as follows: "Well, I'm anticipating that's what it's going to be." In another instance, when responding to a question about whether a listed food expense for the parties' children was based on having them fifty percent of the time, Husband responded, "That's an estimate." Husband's criticism of Wife's projection of certain household expenses is of course curious in light of his own practice, and further, case law points to the propriety of basing an alimony award on what the disadvantaged spouse's reasonable post-divorce expenses are determined to be. *See Stratienko v. Stratienko*, 529 S.W.3d 389, 407 (Tenn. Ct. App. 2017) (discussing, in connection with the review of an alimony award, what a wife's reasonable post-divorce expenses would be).

Based on our review of the record, it is respectfully unclear how the trial court could reach the conclusion that Wife has no need for support.[7] The trial court's finding of no need was itself merely conclusory, and as evidenced from our above overview, even when the various complaints Husband has lodged with respect to Wife's income and expense statement are taken into account alongside consideration that Wife receives child support, the evidence preponderates in favor of a finding that Wife still has a meaningful deficit. Again, despite the conclusory recitation by the trial court that Wife "did not show a need," the evidence supports another finding with greater convincing effect.

Because the trial court's denial of alimony was in part based on its erroneous finding regarding the threshold consideration of need, we conclude that the trial court's denial of alimony should, once again, be vacated and the issue remanded for reconsideration.[8] In turn, the trial court's denial of attorney's fees should also be vacated[9] and the issue remanded for reconsideration. *See Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998) (noting that requests for attorney's fees should be considered only after the court has resolved issues concerning the parties' property and support).

*Scope of Proceedings on Remand; Requests for Appellate Attorney's Fees*

We regret that our resolution will result in some additional delay in bringing these

_____

[7] Of note, Husband's defense of the trial court's action actually appears to in part be predicated upon the speculative considerations regarding Wife's future income that we took issue with in the first appeal. Indeed, when a member of the judicial panel questioned Husband's counsel at oral argument if the record will show that Wife has no need, counsel directed the Court's attention to Wife's "unique career trajectory," referencing the notion that Wife would, in the future, supposedly be earning the same salary as other executives in her family's businesses. As it is, though, Wife was not earning that contemplated salary.

[8] Of course, alongside need, the other primary consideration regarding alimony is the obligor spouse's ability to pay, something about which the trial court made no specific findings here. As to that issue, although Husband's income and expense statement also shows a deficit on its face (albeit one much smaller than the one represented by Wife), Wife has argued on appeal that multiple expenses are overstated. For instance, Wife has noted that Husband had testified that his homeowner's association dues were $40.00 instead of the represented $480.00 per month and that Husband had testified he expected his listed mortgage expense to be reduced. Wife also has noted that Husband had testified that a 401(k) loan payment was soon to be eliminated.

Further, Wife has noted that, regarding Husband's listed tuition expense, certain testimony of Husband's indicated that he apparently did not in fact have to pay the entirety of the expense that he was claiming. Specifically, her brief references the following testimony from Husband regarding the tuition costs for some of the children: "[The last principal] basically said you can go for free if you wanted to, but *I'm not choosing to do that*, I want to pay my share . . . ." (emphasis added) Of note, at the oral argument of this matter, counsel for Husband did not disclaim the notion that Husband had the ability to pay some alimony. Indeed, when a member of the judicial panel inquired into whether Husband's ability to pay was zero, counsel for Husband responded that, while Husband's ability to pay was "not zero," it was "low."

[9] In this case, when the trial court denied any award of attorney's fees as alimony in solido, it noted that the factors in Tennessee Code Annotated section 36-5-121(i) should be considered but then referenced, among other things, that it had already "declined to award Wife alimony."

proceedings to a close, but, as discussed herein, Wife's challenge to the trial court's finding pertaining to her alleged lack of need has merit. The trial court's conclusory finding pertaining to that threshold question simply does not withstand scrutiny. In connection with our disposition herein, we are of the opinion that it is appropriate to acknowledge that time has not stood still while this matter has been on appeal. Moreover, time has certainly not stood still since we previously remanded this case for resolution multiple years ago in 2019; indeed, based on the birth dates of the parties' children that are contained in the record, only three of the parties' six children are still minors. In light of the substantial passage of time that has occurred, it is within the trial court's discretion to reopen the proof with regard to the matters being remanded. We encourage the trial court to support any alimony award given to Wife with clear and specific findings,[10] and it is our hope that the parties and the court can work to address the remanded matters in a timely fashion.

In closing, we address both parties' requests for an award of attorney's fees on appeal. As in the prior appeal of this matter, we respectfully decline to award attorney's fees to either party.[11]

## CONCLUSION

In light of the foregoing reasons, we hereby vacate the trial court's denial of alimony and trial attorney's fees to Wife and remand those issues to the trial court for reconsideration.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[10] "If one spouse is economically disadvantaged compared to the other, the courts are generally inclined to provide some type of support." *Batson v. Batson*, 769 S.W.2d 849, 861 (Tenn. Ct. App. 1988).

[11] As to Wife's request for appellate attorney's fees specifically, we note that, whereas Wife's brief's argument section concerning her request for appellate fees does not directly pinpoint the statutory legal authority undergirding her request, the cases she cites to relate to the attorney's fee provision in Tennessee Code Annotated section 36-5-103(c). Any other questions notwithstanding, the version of that statute applicable to this case cannot serve as a vehicle for an award of fees for the relief Wife pursued in this appeal. Indeed, under the version of the statute that existed when this litigation commenced, Tennessee Code Annotated section 36-5-103(c) provided as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees *incurred in **enforcing** any decree for alimony* and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

(emphases added). Although the provision was later amended in certain respects, the amendment only applies to those actions commenced on or after July 1, 2018. *See* 2018 Tenn. Pub. Acts, Ch. 905.